No. 22-1168

# In the United States Court of Appeals for the Fourth Circuit

PATTI H. MENDERS, on behalf of herself and her minor child R.M;
SCOTT MINEO, on behalf of himself and his minor child A.M;
JANE DOE #2, on behalf of herself and her minor child,

*Plaintiffs-Appellants,*

v.

LOUDOUN COUNTY SCHOOL BOARD,

*Defendant-Appellee.*

**On Appeal from the United States District Court
for the Eastern District of Virginia**

**Case No. 1:21-cv-00669-AJT-TCB**

**BRIEF OF APPELLEE LOUDOUN COUNTY SCHOOL BOARD**

Stacy L. Haney
Andrew P. Selman
HANEY PHINYOWATTANACHIP PLLC
11 South 12th Street, Suite 100 B
Richmond, Virginia 23219
Tel: (804) 500-0310
Fax: (804) 500-0309
shaney@haneyphinyo.com
aselman@haneyphinyo.com

*Attorneys for Appellee Loudoun County
School Board*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __22-1168__    Caption: __PATTI H. MENDERS, ET AL. v. LOUDOUN COUNTY SCHOOL BOARD__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Loudoun County School Board__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Andrew P. Selman                     Date: _____5/12/2022_____

Counsel for: Loudoun County School Board

Print to PDF for Filing

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUES..........................................................1

STATEMENT OF THE CASE............................................................2

SUMMARY OF THE ARGUMENT ....................................................7

ARGUMENT ..................................................................................10

I.    The Parents have failed to demonstrate that the SEA selection
      guidelines discriminate on the basis of race, in violation of the Equal
      Protection Clause..................................................................10

      A.   The *Arlington Heights* factors do not overcome the presumption
           of good faith to which the revised selection guidelines are entitled
           and fail to establish discriminatory intent. ..........................11

      B.   The Parents have not alleged facts to demonstrate the
           disproportionate impact necessary to state a race-based Equal
           Protection claim..................................................................14

II.   The SEA selection guidelines do not offend the First Amendment's
      protections against viewpoint discrimination............................18

      A.   The Parents have not alleged any viewpoint that has been
           impermissibly excluded........................................................18

      B.   The First Amendment does not prevent the School Board from
           taking viewpoint into account when allocating a limited number
           of spots among interested students through a competitive process. ...22

      C.   Viewpoint neutrality is not required for school-sponsored speech.....24

III.  Both Equal Protection Claims fail because the selection guidelines
      satisfy rational basis review. ..................................................28

IV. The Parents do not have standing to assert their claims related to the Bias Reporting Form because there is no objectively reasonable chill to their children's speech.............................................................31

CONCLUSION ....................................................................................40

REQUEST FOR ORAL ARGUMENT ...................................................41

RULE 32 CERTIFICATE OF COMPLIANCE ......................................42

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Pastides*
900 F.3d 160 (4th Cir. 2018) ................................................... 32, 33, 34, 40

*Abbott v. Perez*
--U.S.--, 138 S. Ct. 2305 (2018) ................................................ 14

*ACLU v. Alvarez*
679 F.3d 583 (7th Cir. 2012) ................................................ 37, 38

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ......................................................... 12, 15, 16

*Bauer v. Shepard*
620 F.3d 704 (7th Cir. 2010) ................................................ 37, 38

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ........................................................ 15

*Benham v. City of Charlotte*
635 F.3d 129 (4th Cir. 2011) ......................................................... 32

*Brown v. Board of Education*
347 U.S. 483 (1954) .................................................. 26

*Busch v. Marple Newtown School District*
567 F.3d 89 (3rd Cir. 2009) ......................................................... 28

*Buxton v. Kurtinitis*
862 F.3d 423 (4th Cir. 2017) ........................................... 6, 8, 22, 23, 24, 25

*C.H. v. Oliva*
226 F.3d 198 (3d Cir. 2000) ......................................................... 28

*Child Evangelism Fellowship of Maryland, Inc. v. Montgomery
County Public Schools*
457 F.3d 376 (4th Cir. 2006) ......................................................... 25

iii

*Coalition for TJ v. Fairfax County School Board*
      No. 22-1280, 2022 U.S. App. LEXIS 8682
      (4th Cir. Mar. 31, 2022) .......................................................................... 16, 17

*Downs v. Los Angeles Unified School District*
      228 F.3d 1003 (9th Cir. 2000) ..................................................................... 27

*Fleming v. Jefferson County School District R-1*
      298 F.3d 918 (10th Cir. 2002) ......................................................... 26, 27, 28

*Giarrantano v. Johnson*
      521 F.3d 298 (2008) ........................................................................ 10, 29, 30

*Hardwick v. Heyward*
      711 F.3d 426 (4th Cir. 2013) ....................................................................... 29

*Havoco of America, Ltd. v. Shell Oil Co.*
      626 F.2d 549 (7th Cir. 1980) ....................................................................... 21

*Hazelwood School District v Kuhlmeier*
      484 U.S. 260 (1988) ............................................... 6, 8, 9, 21, 25, 26, 27, 28

*Kaylor v. Fields*
      661 F.2d 1177 (8th Cir. 1981) ..................................................................... 21

*Laird v. Tatum*
      408 U.S. 1 (1972) .................................................................................. 32, 33

*Lee v. Weisman*
      505 U.S. 577 (1992) ..................................................................................... 38

*Liberty University, Inc. v. Lew*
      733 F.3d 72 (4th Cir. 2013) ................................................................... 20, 30

*Locke v. Davey*
      540 U.S. 712 (2004) ..................................................................................... 24

*Mahonoy Area School District v. B.L.*
      141 S. Ct. 2038 (2021) ................................................................................. 40

*Matter of Macula v. Board of Education*
   75 A.D.3d 1118 (App. Div. 4th Dept. 2010) ................................................ 28

*Monroe v. City of Charlottesville*
   579 F.3d 380 (4th Cir. 2009) .................................................................. 10, 16

*Morgan v. Swanson*
   659 F.3d 359 (5th Cir. 2011) ......................................................................... 28

*Myers v. Loudoun County School Board*
   418 F.3d 395 (4th Cir. 2005) .................................................................. 38, 39

*N. Carolina State Conference of the NAACP v. McCrory*
   831 F.3d 204 (4th Cir. 2016) ......................................................................... 17

*N. Carolina State Conference. of the NAACP v. Raymond*
   981 F.3d 295 (4th Cir. 2020) ................................................ 7, 10, 12, 14, 16

*Peck ex rel. Peck v. Baldwinsville Central School District*
   426 F.3d 617 (2d Cir. 2005) ......................................................................... 28

*Perry Education Association v. Perry Local Educators' Association*
   460 U.S. 37 (1983) ....................................................................................... 29

*Planned Parenthood of Southern Nevada, Inc. v. Clark County School District*
   941 F.2d 817 (9th Cir. 1991) ....................................................................... 27

*Porter v. Hamilton*
   No. 1:20-cv-203, 2021 U.S. Dist. LEXIS 73752
   (E.D. Va. Apr. 15, 2021) .............................................................................. 21

*Ramos v. Louisiana*
   --U.S. --, 140 S. Ct. 1390 (2020) ................................................................ 14

*Robertson v. Anderson Mill Elementary School*
   989 F.3d 282 (4th Cir. 2021) ....................................................................... 25

*Rosenberger v. Rector & Visitors of University of Virginia*
   515 U.S. 819 (1995) ..................................................................................... 21

*Rutman Wine Co. v. E. & J. Gallo Winery*
    829 F.2d 729 (9th Cir. 1987) ....................................................... 21

*Searcey v. Harris*
    888 F.2d 1314 (11th Cir. 1989) ................................................ 27

*Speech First, Inc. v. Cartwright*
    No. 21-12583, 2022 U.S. App. LEXIS 10816
    (11th Cir. Apr. 21, 2022) ............................................. 35

*Speech First, Inc. v. Cartwright*
    No. 21-12583, 2022 U.S. App. LEXIS 11864
    (11th Cir. May 2, 2022) ..................................................... 35, 36

*Speech First, Inc. v. Fenves*
    979 F.3d 319 (5th Cir. 2020) .......................................... 35, 36

*Speech First, Inc. v. Killeen*
    968 F.3d 628 (7th Cir. 2020) ...................................................... 35

*Speech First, Inc. v. Schlissel*
    939 F.3d 756 (6th Cir. 2019) .............................................. 35, 36

*Tinker v. Des Moines Independent Community School District*
    393 U.S. 503 (1969) ............................................................ 25, 26

*United States v. Fordice*
    505 U. S. 717 (1992) ................................................................. 14

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*
    429 U.S. 252 (1977) ................................................ 11, 12, 13, 16

*Ward v. Hickey*
    996 F.2d 448 (1st Cir. 1993) ...................................................... 26

*Washington v. Davis*
    426 U.S. 229 (1976) ................................................................. 17

**Rules**

Fed. R. Civ. P. 12(b)(1) .............................................................. 5

Fed. R. Civ. P. 12(b)(6) .............................................................. 5

# JURISDICTIONAL STATEMENT

The Court lacks subject matter jurisdiction to address the First Amendment overbreadth claims in Counts IV and V of the First Amended Complaint related to the Bias Response Form because the Parents do not have standing to make those challenges.  Otherwise, the School Board agrees with the Parents' jurisdictional statement.

# STATEMENT OF THE ISSUES

1.    Whether the district court correctly dismissed the Parents' race-based Equal Protection claim because the Parents have not alleged that the SEA selection guidelines were established with a discriminatory purpose or had a disproportionate impact on white students.

2.    Whether the district court correctly dismissed the Parents' viewpoint discrimination claims under the First Amendment and the Equal Protection Clause when the Parents have not alleged a cognizable viewpoint excluded by the selection guidelines and school administrators under the circumstances could lawfully consider viewpoints when making determinations.

3.    Whether the district court correctly held that the Parents' lacked standing to pursue their First Amendment overbreadth claims because they have not

alleged facts to demonstrate an objectively reasonable chill to their children's speech

## STATEMENT OF THE CASE

The Loudoun County School Board ("School Board") commissioned an equity assessment in June 2019 to address racial inequality in the school division. J.A. 14 (First Amended Complaint ("FAC") ¶ 22), 38.  Among other conclusions, the assessment indicated that Black/African-American, Latinx, and Muslim students were particularly affected by racial insults or slurs, and even racially motivated violent actions.  J.A. 14 (FAC ¶ 22), 38–39.  In an effort to remedy these issues, the School Board developed an "Action Plan to Combat Systemic Racism" in June 2020.  J.A. 15 (FAC ¶ 24), 65–86.  The Action Plan included developing the Student Equity Ambassador ("SEA") Program to amplify the voices of students and to emphasize student voice in education more generally.  J.A. 17 (FAC ¶ 29–30), 82.  In particular, SEA participants would participate in "Share, Speak Up, Speak Out" sessions, where student stories regarding experiencing or witnessing "injustices, marginalization, or discrimination" would be discussed.  J.A. 115.  An electronic form was created to collect these stories in order to allow students to "anonymously share their stories regarding issues of racism, injustice and inequity" and was titled "Share, Speak Up, Speak Out: Bias Reporting Form" ("Bias Reporting Form").  J.A. 82, 125.

*The Student Equity Ambassador Program*

Under the SEA Program, two or three students from each middle and high school in the school division are selected by each school principal to participate. J.A. 16–17 (FAC ¶ 28).  When more than three students show interest or are nominated, a school administrator "will use the recommended student attributes to determine which student will best serve their peers in this capacity."  J.A. 116. Directions to school administrators identify these "[s]tudent attributes to consider when recommending students," which include being able to demonstrate honesty, respect, and sensitivity, as well as having "the respect and credibility of their peers" and "a passion for social justice and are willing to serve."  J.A. 116. Although an initial version of the SEA selection guidelines provided that the opportunity was open to all students of color, those guidelines were removed from the school division's website and that provision "deleted" from the version of the guidelines that was implemented.  J.A. 18–19, 21 (FAC ¶¶ 33, 38–39, 45).  The revised guidelines do not include any racial classifications.  J.A. 19, 26 (FAC ¶¶ 38, 39, 69).  School division administrators also communicated that "all students (white or otherwise) are more than welcome to potentially serve as ambassadors," and indeed white students have been selected to be Student Equity Ambassadors. J.A. 19–20, 21 (FAC at ¶¶ 39, 41, 45).  A flyer was distributed, inviting students to serve as an SEA by asking rhetorically, "Do you want to be a Voice for Social

Justice?"; "Are you interested in Amplifying the Student Voice of Color?"; and

"Do you want to Represent your Peers of Color by sharing their experiences in

[Loudoun County Public Schools]?" J.A. 18–19 (FAC ¶ 36), 117. Participation in

the SEA Program "as with any student leadership position, [] is a valuable

credential for students looking to improve their resume." J.A. 21 (FAC ¶ 44).

*The Bias Reporting Form*

The SEAs participate in "Share, Speak-up, Speak-out" meetings, in which

the SEAs review stories and experiences shared by the Supervisor of Equity. J.A.

17 (FAC ¶¶ 29, 31), 115. These stories are collected through the Bias Reporting

Form, which was distributed to parents and students. J.A. 22 (FAC ¶ 47) 125–27.

The form includes a section for the respondent to indicate the type of bias incident

being reported and to explain the incident. J.A. 22 (FAC ¶ 49), 125–27. As the

Bias Reporting Form makes clear, "the primary use of this form is for the Office of

Equity to capture stories and incidents of bias in an anonymous manner" to be

"used in an anonymous manner for the Share, Speak Up, Speak Out sessions of the

Student Equity Ambassadors." J.A. 125–26. Students have the option to request

the information reported to be investigated "by the administrators at your school,"

and students are notified that they must provide their name in order for the Office

of Equity "to submit your name to your school." J.A. 126. The Action Plan makes

clear that the Bias Reporting Form does not supersede any existing policies or

codes of student conduct.  J.A. 82.  Students are directed to "still report discipline incidents to a trusted adult or members of the administrative team."  J.A. 24 (FAC ¶ 56).

### The Parents' Challenge

The Plaintiff-Appellants in this case are the parents ("the Parents") of several children who are students in the Loudoun County school division and who hold views they believe conflict with the definition of "social justice" used in the SEA selection guidelines, which the Parents allege makes their children unqualified to be SEAs.  J.A. 12–13, 24 (FAC ¶¶ 13–17, 59–60), 139.  The Parents challenge the SEA Program selection guidelines based on their alleged racial preferences under the Equal Protection Clause and their alleged viewpoint discrimination under the First Amendment and the Equal Protection Clause.  The Parents also challenge the Bias Reporting Form on First Amendment grounds.  The Parents filed their original complaint in June 2021.  They later filed the First Amendment Complaint, which the School Board moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

### The District Court's Holdings

In response to the School Board's motion to dismiss, the district court dismissed each of the Parents' five claims.  The district court dismissed the Parents' race-based Equal Protection claim because the selection guidelines were

not enacted with discriminatory intent and did not have a discriminatory impact.
J.A. 138–39.

The district court dismissed the viewpoint discrimination-based Equal
Protection claim because the selection guidelines were rationally related to the
legitimate pedagogical purposes of the School Board.  J.A. 139–40.  The district
court also held that school officials could take viewpoint into account when
regulating speech when the speech was school sponsored, citing *Hazelwood School
District v Kuhlmeier*, 484 U.S. 260, 273 (1988), as well as when choosing between
candidates in a competitive process, citing *Buxton v. Kurtinitis*, 862 F.3d 423, 430
(4th Cir. 2017).

The district court dismissed the First Amendment claim regarding the
selection guidelines because the Parents had not alleged facts to demonstrate that
"a passion for social justice" was a cognizable viewpoint on which to base their
claim, and in either case, *Hazelwood* and *Buxton* permit the selection guidelines to
reference particular viewpoints.  J.A. 143–44.

The district court also held that the Parents lacked standing to assert their
First Amendment claims related to the Bias Reporting Form because they failed to
allege any facts to make plausible that the Form would harm them or their children
in any way.  J.A. 144–45.

The Parents filed a timely notice of appeal on February 17, 2022.  J.A. 147.

## SUMMARY OF THE ARGUMENT

The district court properly dismissed the Parents' Equal Protection claims (race and viewpoint discrimination) and First Amendment claim (viewpoint discrimination) related to the SEA selection guidelines. The district court also properly held that the Parents do not have standing to bring a First Amendment overbreadth claim regarding the Bias Reporting Form. The Parents' arguments on appeal are based on inaccurate applications of the law as well as distortions and mischaracterizations of the facts alleged.

Concerning the Parents' race-based Equal Protection claim, the SEA selection guidelines are facially neutral with regard to race, and the facts alleged do not demonstrate that the selection guidelines were established with a discriminatory intent. The School Board is entitled to a presumption of good faith regarding the selection guidelines, and the allegations regarding the history the selection guidelines do not overcome this presumption or otherwise demonstrate the requisite discriminatory intent. The Parents' arguments regarding an early version of the guidelines are a flawed attempt to shift the burden of defending the guidelines to the School Board, when in actuality the Parents have failed in their burden to demonstrate the required discriminatory intent. *N. Carolina State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 303 (4th Cir. 2020). In addition, the Parents erroneously argue that they do not need to plead that the selection

7

guidelines have a disproportionate impact, and, indeed, they fail to allege facts that demonstrate any such impact.

The Parents' viewpoint discrimination claims fail because the selection guidelines do not result in unconstitutional viewpoint discrimination for three reasons. *First*, the Parents do not allege an actual viewpoint that has been excluded based on the selection guidelines. Rather, the Parents attempt to transform some identified attributes that suggest a student may be an effective SEA, or even specific activities that the SEAs will perform, into cognizable viewpoints and further argue that these viewpoints are required participate in the program. The facts actually alleged in the First Amended Complaint, however, do not support the Parents' argument. *Second*, the selection guidelines are a function of allocating a limited number of SEA positions to interested students through a competitive process. Under those circumstances, the viewpoints of the interested students can be considered without offending the Constitution. *See Buxton v. Kurtinitis*, 862 F.3d 423, 429–30 (4th Cir. 2017). *Third*, under the Supreme Court's decision in *Hazelwood v. Kuhlmeier*, 484 U.S. 260 (1988), school officials are not required to engage in only viewpoint-neutral regulation of school-sponsored student speech. The Parents' argument that the weight of authority requires the opposite conclusion is based on cases analyzing and applying

*Hazelwood* outside of its intended context of school-sponsored student speech, which the SEA Program is.

Under the Equal Protection Clause, the selection guidelines are subject to rational basis review because they do not involve suspect classifications or impinge on a fundamental right. The selection guidelines satisfy this review because they are rationally related to the legitimate purposes of the School Board. The Parents' argument that strict scrutiny applies misconstrues the facts alleged and the district court's opinion.

Finally, the Parents do not have standing to bring any First Amendment claims with respect to the Bias Reporting Form. They must allege facts to demonstrate an objectively reasonable chill to their children's speech as a result of the Form, but they failed to do so. The cases from other jurisdictions they rely on to demonstrate the presence of an objective chill involve bias response systems materially different from the Bias Reporting Form. Similarly, the Parents' attempt to rely on "indirect coercion analysis" is unavailing because that analysis has never been applied by this Court outside of the context of challenges to religious activities, which are not at issue here.

For these reasons, the district court's opinion should be affirmed.

## ARGUMENT

### I. The Parents have failed to demonstrate that the SEA selection guidelines discriminate on the basis of race, in violation of the Equal Protection Clause.

The Parents assert in Count I of the Amended Complaint that the SEA

Program selection guidelines discriminate against white students in violation of the

Equal Protection Clause, even though the selection guidelines do not contain

explicit racial classifications.  Brief at 17.  In order to establish an Equal Protection

violation without an explicit racial classification, the Parents must allege facts to

demonstrate that the selection guidelines were both (1) established with

discriminatory intent and (2) have an actual discriminatory impact.[1]  *See N.*

*Carolina State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 302 (4th Cir.

2020); *Monroe v. City of Charlottesville*, 579 F.3d 380, 388 (4th Cir. 2009).  The

district court properly dismissed the Parents' race-based Equal Protection claim

because the Parents did not allege facts to plausibly demonstrate that the SEA

Program was adopted with discriminatory intent or that the SEA Program has a

discriminatory impact.  J.A. 136–39.

---

[1] The Parents must also demonstrate that the selection guidelines do not satisfy rational basis review, i.e., that the selection guidelines are not rationally related to a legitimate state interest.  *See Giarrantano v. Johnson*, 521 F.3d 298, 303 (2008) (noting that "the challenged classification need only be rationally related to a legitimate state interest unless it . . . is drawn upon a suspect classification such as race").  The reasons the selection guidelines satisfy rational basis review are explained in Section III below.

On appeal, the Parents argue that race motivated the SEA Program, and so the SEA selection guidelines are unconstitutional because School Board failed to "grapple" with "the sordid history of the SEA Program." Brief at 17–20, 21–22. The Parents also argue that they do not need to demonstrate a disproportionate impact to state a claim, and that they have sufficiently alleged such an impact in either case. Brief at 20–22.

For the reasons explained below, the Parents have not alleged facts to support either that the SEA selection guidelines were established with a discriminatory intent or that they have a disproportionate impact, which is required, and the Parents' arguments to the contrary are unpersuasive. Accordingly, the district court properly dismissed their race-based Equal Protection claim.

**A. The *Arlington Heights* factors do not overcome the presumption of good faith to which the revised selection guidelines are entitled and fail to establish discriminatory intent.**

To determine whether discriminatory intent was a motivating factor in a government action in the absence of an explicit racial classification, courts look to the factors identified by the Supreme Court in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). These factors include considering the historical background of the contested law, "the specific sequence of events leading to the law's enactment," the law's legislative history

and any departures from the normal legislative process, and whether the law "bears more heavily on one race than another." *See Raymond*, 981 F.3d at 303 (citing *Arlington Heights*, 429 U.S. at 265–69). When considering these factors, the government must be afforded a presumption of good faith, and even a finding of past discrimination cannot overcome the presumption that the government acted properly in the current instance. *See id.*

Setting aside the labels and conclusory allegations supplied by the Parents but which are not to be considered as factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Amended Complaint does not contain facts that, in light of the *Arlington Heights* factors, show that racial discrimination motivated the SEA selection guidelines. The SEA Program has its impetus in the Action Plan and is intended to give a voice to students of color, who have indicated they felt marginalized and suffered discrimination. J.A. 82. Not only was the reference to SEAs being students of color eliminated from the early draft of the guidelines, but school division administrators also communicated that "all students (white or otherwise) are more than welcome to potentially serve as ambassadors." J.A. 19–20 (FAC at ¶¶ 39, 41). Although the previous selection guidelines are not irrelevant in applying the *Arlington Heights* factors, the previous guidelines cannot remove the presumption of good faith as to the revised selection guidelines. *See Raymond*, 981 F.3d at 303. There are no facts alleged regarding any other history

behind the selection guidelines or events leading up to their adoption that suggest the *revised selection guidelines* were intended to discriminate against white students, as opposed to select students for a program with the purpose of combating and remedying discrimination.[2]  The Parents have the burden of alleging facts to plausibly demonstrate the revised selection guidelines were implemented with discriminatory intent, and they have failed to do so.

The Parents' argument that the selection guidelines are unlawful because the School Board has not "grappled" with the guideline's history is not legally supported, *see* Brief at 21–22, and has been soundly rejected by this Court and the Supreme Court.  In requiring the School Board to "grapple with the sordid history" of the selection guidelines,[3] the Parents attempt to negate the presumption of good faith and shift to the School Board the burden of demonstrating that the revised

_____

[2] The Parents' assertions on page 20 of their Brief that despite being given the revised selection guidelines with an "emphasis on 'amplifying the voice of students of color,'" principals "took the hint" and still overwhelmingly selected students of color are not based on any facts alleged in the First Amended Complaint and cannot be raised for the first time on appeal.

[3] To be sure, the School Board does not concede that the initial selection guidelines for the SEAs were unlawful, and the legality of the initial selection guidelines are not at issue in this case.  But in either case, the Parents' argument on this point only makes sense if the Parents are arguing that the Action Plan itself is "tawdry" and "sordid," which they are not.  *See* Brief at 17; J.A. 140 (recognizing that "Plaintiffs do not challenge that [the School Board's] purposes in adopting the SEA program are not legitimate").  The revised selection guidelines removed the racial classification, and the Parents provide no support for their argument that anything more than this would or could be required in these circumstances.

selection guidelines were *not* intended to racially discriminate.  This position

advanced by the Parents is "fundamentally flawed."  *See Raymond*, 981 F.3d at

304 (quoting *Abbott v. Perez*, --U.S.--, 138 S. Ct. 2305, 2326 (2018)).  The Parents

further misconstrue the Supreme Court's precedent on this issue by pointing to

dicta in Justice Sotomayor's concurrence in *Ramos v. Louisiana*, --U.S.--, 140 S.

Ct. 1390, 1410 (2020) in support of their argument.  *See* Brief at 21.  Justice

Sotomayor's observation quoted by the Parents was made in the context of

addressing the Sixth Amendment right to a unanimous verdict in a jury trial, not an

Equal Protection claim, and it in turn cites a case addressing whether a state had

discharged its constitutional duty to eradicate policies and practices traceable to is

prior *de jure* segregation.  *See Ramos v. Louisiana*, 140 S. Ct. 1390, 1410 (2020)

(Sotomayor, J., concurring) (citing *United States v. Fordice*, 505 U. S. 717, 729

(1992)).  Neither of these contexts are relevant to the SEA Program and so provide

no support to the Parents' argument.

**B.  The Parents have not alleged facts to demonstrate the disproportionate impact necessary to state a race-based Equal Protection claim.**

In addition to demonstrating discriminatory intent, a plaintiff asserting an

Equal Protection claim based on racial discrimination must demonstrate a

disproportionate impact.  *Raymond*, 981 F.3d at 302.  The district court properly

dismissed the Parents' claim because they failed to allege facts to demonstrate this required element of their claim.  J.A. 139.

The Supreme Court has noted that facts that are "merely consistent with" a defendant's liability "stop[] short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  The only fact alleged to which the Parents point to support a conclusion of disproportionate impact is that 17 percent of the SEAs selected during the 2020-2021 school year identify as "white only," and "white only" students comprise 47 percent of the students enrolled in the school division.  *See* Brief at 22–23; J.A. 21 (FAC ¶ 45).  Without more facts alleged putting this statistic into context, this fact is at best "merely consistent with" a disproportionate impact; it is not a reasonable inference that the race-neutral selection guidelines are responsible for the disparity that the Parents identify.  *Iqbal*, 556 U.S. at 678.  The Parents allege no facts that address how this representation relates to the demographics of the pool of students who applied or were considered for the position, including the racial make-up of the individual schools from which each SEA was selected and of the candidate pool for each school.[4]  *See* J.A. 139.

---

[4] Although the Parents argue they are not required to make these specific allegations to state their claim, *see* Brief at 22, they must nevertheless allege facts beyond those merely consistent with a disproportionate impact.  *See Iqbal*, 556 U.S. at 678.  The facts the Parents have alleged fall short.

Moreover, the Parents accuse the district court of improperly speculating that "white students may have decided not to apply for reasons other than race," Brief at 22, but the Parents concluded that their own children chose not to apply to the SEA Program because of their political views, not because of race. *See* J.A. 12–13, 24 (FAC ¶¶ 13–17, 59–60), 139. Thus, the district court was not speculating, and the Parents' own allegations prevent any inference of discriminatory impact.

The Parents' argument that they need not allege disproportionate impact at all is unavailing. *See* Brief at 20–21. The district court did not indicate, as the Parents suggest, that the Parents must allege and prove each of the *Arlington Heights* factors, but only indicated that they must allege an actual discriminatory impact, J.A. 136, which this Court has consistently required. *Raymond*, 981 F.3d at 302 ("To prevail on the merits of their constitutional challenges, these Challengers had to prove that the [law] was passed with discriminatory intent and has an actual discriminatory impact."); *Monroe*, 579 F.3d at 388 ("An equal protection violation occurs . . . when a law is facially neutral, but its administration or enforcement disproportionately affects one class of persons over another and a discriminatory intent or animus is shown."). The Parents misapprehend this Court's observations that disproportionate impact is not "the sole touchstone" of a claim based on discriminatory intent. *See* Brief at 21 (quoting *Coal. for TJ v. Fairfax Cty. Sch. Bd.*, No. 22-1280, 2022 U.S. App. LEXIS 8682, at *23 (4th Cir.

Mar. 31, 2022) (Rushing, J., dissenting)).[5]  The "sole touchstone" language simply explains that a race-based Equal Protection claim cannot be established by disproportionate impact alone.  *Washington v. Davis*, 426 U.S. 229, 242 (1976) (noting that a facially neutral law is not "invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another.  Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution."); *N. Carolina State Conference of the NAACP v. McCrory*, 831 F.3d 204, 231 (4th Cir. 2016) ("When plaintiffs contend that a law was motivated by discriminatory intent, proof of disproportionate impact is not 'the sole touchstone' of the claim.  Rather, plaintiffs asserting such claims must offer other evidence that establishes discriminatory intent in the totality of the circumstances." (internal citation omitted)).  But this does not mean, as the Parents suggest, that a plaintiff need not allege *any* disproportionate impact to state a race-based Equal Protection claim.  In other words, alleging a disproportionate impact is necessary, but not sufficient, for the Parents to state a race-based Equal Protection claim.

---

[5] Judge Heytens's concurring opinion in *Coalition for TJ* supports the School Board's position on this point.  *See id.* at *3 (Heytens, J., concurring) ("[U]nder existing precedent, [race neutral] policies are not constitutionally suspect unless a plaintiff can demonstrate (in addition to 'actual discriminatory impact') that the challenged policy was adopted 'with discriminatory intent.'").

Because the Parents have failed to plausibly allege that the revised selection

guidelines caused an actual disproportionate impact on white students, they have

failed to state a race-based Equal Protection claim, and their claim was properly

dismissed.

## II. The SEA selection guidelines do not offend the First Amendment's protections against viewpoint discrimination.

The Parents assert that the SEA selection guidelines unlawfully discriminate

on the basis of viewpoint in violation of the First Amendment (Count II).  The

Parents argue in their Brief that the district court improperly dismissed their First

Amendment viewpoint discrimination claim because (1) they have alleged

viewpoints against which the SEA selection guidelines discriminate, Brief at 26–

30; (2) that forum analysis should be applied to their viewpoint discrimination

claim, Brief at 33–34; and (3) regulations on school-sponsored speech must be

viewpoint neutral, Brief at 30–32.  None of these arguments persuasively

demonstrate that the district court erred in dismissing the Parents' viewpoint

discrimination claims, as explained in turn below.  Accordingly, the district court

properly dismissed the Parents' First Amendment viewpoint discrimination claim.

### A. The Parents have not alleged any viewpoint that has been impermissibly excluded.

As a threshold matter, the Parent's viewpoint discrimination claim fails

because they have not alleged any viewpoint that has been excluded.  Nothing in

the selection guidelines says that students with particular viewpoints are excluded

from participation, or indeed that any particular viewpoint is required for

participation in the program.  J.A. 114–17.  The selection guidelines merely invite

a recommender to consider attributes students possesses that would make them

successful in the program when recommending them in the event there are more

interested students than there are spots available.  J.A. 116.  These attributes

include having "a passion for social justice," but also include, for example, being

honest, sympathetic, sensitive, and having the respect of their peers.  J.A. 116.  The

Parents' contention that mentioning "a passion for social justice" as an attribute to

consider precludes individuals with particular viewpoints is therefore like arguing

that the selection guidelines discriminate against those who do not believe in being,

or who are not, honest, sympathetic, or sensitive.

Indeed, the point of the SEA Program is to perform a certain action, i.e.,

"amplifying the voice of Students of Color," J.A. 115, which makes student

participation in the program about how the student spends her time and her

willingness to help other students.  Nothing in the SEA selection guidelines

suggest that students cannot fulfill these purposes while still holding the

viewpoints that the Parents allege their children hold.  Similarly, the Parents'

assertion that inviting students interested in "amplifying the Student Voice of

Color" and "representing your Peers of Color" to serve as an SEA somehow

unlawfully targets particular viewpoints is unpersuasive.[6]  These are not

viewpoints expressed but are activities that a student would engage in if she were

selected to be an SEA.  In addition, these phrases come from advertising materials

and are not indicative of formal requirements for selection as an SEA.  *See* J.A.

18–19 (FAC ¶¶ 36, 39), 117.  This is no different than inviting students interested

in theatre to audition for the school play and does not reflect any intended or actual

discrimination based on any viewpoint.

This lack of a discernable viewpoint in the Amended Complaint highlights

the way that the Parents have mischaracterized the SEA selection guidelines in

their Brief.  There are no facts alleged showing that SEAs must "promise" to

amplify voices of students of color or "have a proven track record" of a passion for

social justice, which the Parents seek to characterize as "explicitly ideological

boxes."  *See* Brief at 26–27.  Nor are there any allegations demonstrating that

SEAs are "expected to be youthful social justice warriors."  *See* Brief at 27.  In

addition, the Parents do not allege that any students holding "conservative views"

on social justice are being excluded from participating in the SEA Program on that

---

[6] The Parents point to these activities as representing substantive viewpoints for the first time in their Brief, after previously only relying on "social justice" as the viewpoint on which they based their claim.  J.A. 20–21 (FAC ¶ 43), 142–43. Because a party cannot raise arguments for the first time on appeal, *see Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 87 n.3 (4th Cir. 2013), the Parents cannot point to these alleged viewpoints as the basis of their viewpoint discrimination claim.

basis. *See* Brief at 29. For this reason, the Parents' reliance on *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819 (1995), is misplaced, as there is no wholesale exclusion of particular viewpoints in selecting students for the SEA Program.[7] *See* Brief at 29.

The Parents' additional argument that they are entitled to develop facts in discovery to demonstrate social justice is a viewpoint is unpersuasive. Discovery "is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim." *Porter v. Hamilton*, No. 1:20-cv-203, 2021 U.S. Dist. LEXIS 73752, at *4 (E.D. Va. April 15, 2021) (quoting *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981)). Indeed, as courts have noted, the purpose of a motion to dismiss is precisely "to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549, 553 (7th Cir. 1980) (noting that "if the allegations of the complaint fail to establish the requisite elements of the cause of action, our

---

[7] *Rosenburger* is also inapposite because it does not concern school-sponsored student speech in the K-12 setting. As explained in Section IIC below, viewpoint neutrality is not required when schools wish to regulate speech in that context. Indeed, *Rosenburger* itself recognizes that different principles apply when addressing the school's own speech. 515 U.S. at 834 ("A holding that the University may not discriminate based on the viewpoint of private persons whose speech it facilitates does not restrict the University's own speech, which is controlled by different principles." (citing *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 270–72 (1988))).

requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility"). These concerns are even more poignant in this case, where, as the district court observed, there is "the potential to substantially disrupt the educational environment through discovery, including depositions, which would likely be aimed at students, parents, teachers and administrators." J.A. 145.

The Parents failed to allege a discernable viewpoint on which to base their viewpoint discrimination claims. This Court should therefore affirm the district court's dismissal of Count II of the Amended Complaint.

**B.  The First Amendment does not prevent the School Board from taking viewpoint into account when allocating a limited number of spots among interested students through a competitive process.**

Even if the reference to "a passion for social justice" in the selection guidelines did implicate particular viewpoints, which it does not, the Parents still have not demonstrated any cognizable claim for viewpoint discrimination based on the selection guidelines. This Court has held that when a school is providing a public benefit that is allocated to a limited number of persons through a competitive process, the school may take viewpoints into consideration and make determinations based on those viewpoints without violating the Free Speech Clause. *Buxton v. Kurtinitis*, 862 F.3d 423, 429–30 (4th Cir. 2017). Any

viewpoint discrimination claims arising from that context are properly addressed as an Equal Protection claim. *See id.* at 431.

The *Buxton* framework is applicable here. The Parents allege that participation in the SEA Program "as with any student leadership position, [] is a valuable credential for students looking to improve their resume." J.A. 21. Accordingly, the SEA selection guidelines are a function of the limited number of spots available to students at each school and are part of the competitive process through which these limited number of spots are allocated among interested students. J.A. 16–17 (FAC ¶¶ 28, 31), 116. Under those circumstances, the viewpoints of the potential SEAs may be considered in determining which students would be awarded an SEA position. *See Buxton*, 862 F.3d at 429–30.

The Parents' attempts to distinguish the circumstances of *Buxton* from this case in order to apply forum analysis here are unpersuasive. *See* Brief at 33–34. The Parents emphasize that the claim in *Buxton* was retaliation, but this difference is legally insignificant. While the plaintiff in *Buxton* framed his claim as retaliation instead of discrimination, *Buxton* claimed that he was denied one of a limited number of spaces in a program due to his views. *Buxton*, 862 F.3d at 425–427. Similarly, the Parents here claim that their children would have been denied one of the limited slots for SEAs, had they applied, because of their views. Given that the nature of the challenge here is to selection guidelines for a limited number

of spots competitively allocated, *Buxton* provides the proper framework.  Likewise, the purpose of the SEA Program is legally insignificant on this point, as the challenge is to the selection guidelines to participate in the program in the first place.  The Parents cite no authority supporting their apparent position that the nature of the underlying program affects the *Buxton* framework.  *See* Brief at 34.

Because the circumstances of this case are not meaningfully distinguishable from those in *Buxton*, the Parents' argument that "forum analysis" instead should be applied to the SEA Program is also unpersuasive.  As this Court noted, "[n]othing about these [forum analysis] cases, however, fits neatly with Buxton's claim.  And the Supreme Court has already rejected efforts to force claims like Buxton's into the public forum framework."  *Buxton*, 862 F.3d at 428 (citing *Locke v. Davey*, 540 U.S. 712 (2004)).  Likewise, the Parents' efforts to shoehorn their claim into the public forum framework should be rejected.

### C.  Viewpoint neutrality is not required for school-sponsored speech.

Even if the Parents' allegations could be construed as stating a substantive viewpoint, and even if *Buxton* does not provide the appropriate framework to analyze the Parents' viewpoint discrimination claim—neither of which is true—the Parents' claim must still fail because viewpoint-neutral regulation of speech is not required in a nonpublic forum for school-sponsored student speech or activities.

24

This Court in *Robertson v. Anderson Mill Elementary School*, 989 F.3d 282, 290 (4th Cir. 2021), noted recently that neither it nor the Supreme Court has held that restrictions on school-sponsored student speech must be viewpoint neutral. The Parents erroneously cite this Court's decision in *Child Evangelism Fellowship of Maryland, Inc. v. Montgomery County Public Schools*, 457 F.3d 376, 384 (4th Cir. 2006) to support their argument that this Court requires viewpoint neutrality in a nonpublic forum. *See* Brief at 30. But *Child Evangelism Fellowship* is not analogous to the speech at issue here, as the Parents contend. In *Child Evangelism Fellowship*, a church sued the school division because its informational flyers were excluded from the division's take-home flyer program, which was established to enable outside organizations to disseminate their flyers to students. 457 F.3d at 378. The case does not address school-sponsored student speech and so cannot shed light on the unique concerns present in that context or provide any support for the Parents' position.

In *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 273 (1988), the Supreme Court held that school officials may constitutionally restrict school-sponsored student speech when the restrictions are reasonably related to legitimate pedagogical concerns.[8] Given the "special characteristics of the school

---

[8] The Court in *Hazelwood* specifically noted that its holding was intended to allow greater restrictions on student speech than the framework set out in *Tinker v. Des*

environment," if school officials were prevented from exercising control over school-sponsored student speech, the schools would be "unduly constrained from fulfilling their role as 'a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment.'" *Hazelwood*, 484 U.S. at 272 (quoting *Brown v. Board of Education*, 347 U.S. 483, 493 (1954)).

Although *Hazelwood* does not specify whether these restrictions must be viewpoint neutral, the Tenth Circuit in *Fleming v. Jefferson County School District R-1*, 298 F.3d 918 (10th Cir. 2002), persuasively explains why *Hazelwood* does not require viewpoint neutrality for school-sponsored student speech.[9] In particular, the *Fleming* Court observed that "[i]n light of the Court's emphasis on the special characteristics of the school environment and the deference to be accorded to school administrators about pedagogical interests, it would make no sense to assume that *Hazelwood* did nothing more than simply repeat the traditional nonpublic forum analysis in school cases." *Fleming*, 298 F.3d at 926 (internal

---

*Moines Independent Community School District*, 393 U.S. 503 (1969), because of the additional considerations applicable when the speech is also school sponsored, *see Hazelwood*, 484 U.S. at 271–73, so the Parents' invocation of *Tinker* is unhelpful to their position. *See* Brief at 31.

[9] The First Circuit has also recognized that *Hazelwood* does not require viewpoint neutrality. *Ward v. Hickey*, 996 F.2d 448, 454 (1st Cir. 1993) ("[T]he Court in [*Hazelwood*] did not require that school regulation of school-sponsored speech be viewpoint neutral.").

citation and quotation marks omitted). Indeed, the absence of any commentary or

analysis on the viewpoint neutrality of the school's speech regulations of school-

sponsored speech—even though the general requirement that regulations in a

nonpublic forum must be viewpoint neutral had already been established—

suggests that the Supreme Court viewed school-sponsored student speech

differently from other nonpublic forums. *See id.* at 928. In addition, the Supreme

Court's "specific reasons supporting greater control over school-sponsored speech,

such as determining the appropriateness of the message, the sensitivity of the issue,

and with which messages a school chooses to associate itself, often will turn on

viewpoint-based judgments." *Id.* As the *Fleming* Court illustrated, "[n]o doubt the

school could promote student speech advocating against drug use, without being

obligated to sponsor speech with the opposing viewpoint." *Id.* Indeed, for

*Hazelwood* to have any meaning at all, schools must be able to consider viewpoints

when regulating school-sponsored student speech.

In contrast, five of the eight cases that the Parents cite in favor of their

position that viewpoint neutrality is required do not actually involve school-

sponsored student speech, but rather speech by non-students. *Downs v. Los

Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1011 (9th Cir. 2000) (teacher); *Planned

Parenthood of S. Nev., Inc. v. Clark Cty. Sch. Dist.*, 941 F.2d 817, 829 (9th Cir.

1991) (outside organization); *Searcey v. Harris*, 888 F.2d 1314, 1319 n.7 (11th Cir.

1989) (outside organization); *Busch v. Marple Newtown Sch. Dist.*, 567 F.3d 89,

108 (3rd Cir. 2009) (parent); *Matter of Macula v. Bd. of Educ.*, 75 A.D.3d 1118,

1120, 906 N.Y.S.2d 193, 194 (App. Div. 4th Dept. 2010) (outside individual).  For

two of the remaining cases, which did involve student speech, the concurring and

dissenting opinions on which Plaintiffs rely specifically noted that the facts of

those cases fell outside of the *Hazelwood* framework.  *Morgan v. Swanson*, 659

F.3d 359, 390 (5th Cir. 2011) (Jones, C.J., concurring); *C.H. v. Oliva*, 226 F.3d

198, 213–14 (3d Cir. 2000) (Alito, J., dissenting).  Accordingly, these cases cited

by the Parents lack the persuasive value of *Fleming* and do not support the Parents'

position that viewpoint neutrality must be applied to school-sponsored student

speech, which is the speech at issue here.[10]  *See* Brief at 30.

### III. Both Equal Protection Claims fail because the selection guidelines satisfy rational basis review.

In addition to their claim in Count I that the SEA Program selection

guidelines violate the Equal Protection clause because they are racially

discriminatory, the Parents also assert in Count III of the Amended Complaint that

the selection guidelines violate the Equal Protection clause because of viewpoint

---

[10] Of the eight cases that the Parents cite, only *Peck ex rel. Peck v. Baldwinsville Central School District*, 426 F.3d 617 (2d Cir. 2005) involves school-sponsored student speech, holds that the *Hazelwood* framework applies to the case, and then holds that viewpoint neutrality is required.  This single case does not suggest the broad consensus and inevitability concerning the Parents' position that they suggest.  *See* Brief at 31–32.

discrimination. J.A. 29. Under Equal Protection analysis, a challenged classification that is not drawn along suspect lines (such as race or religion) or does not violate a fundamental right (such as protected speech) is presumed valid and will be upheld if the classification is rationally related to a legitimate state interest. *See Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008). The SEA selection guidelines are not racially discriminatory, as explained in Section I above, and so they are not drawn along suspect lines. Also, the Parents acknowledge that the SEA Program and the "Speak Up, Speak Out" meetings are a nonpublic forum, J.A. 28 (FAC ¶ 85), which means that their children have no fundamental right to access the Program.[11] *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983). So, the SEA selection guidelines only need to be rationally related to the legitimate interests of the School Board. *See Giarrantano*, 521 F.3d at 303. The Parents therefore "bear[] the burden to negate every conceivable basis which might support" the challenged classification, and a classification "does not offend the Constitution simply because the classification is not made with

---

[11] In their Brief, the Parents do not address their Equal Protection viewpoint discrimination claim separately from their First Amendment viewpoint discrimination claim. When a First Amendment claim is the basis for an alleged equal protection violation, courts may "fuse" the First Amendment into the Equal Protection Clause, and the First Amendment claim provides the operative analysis. *See Hardwick v. Heyward*, 711 F.3d 426, 442 (4th Cir. 2013). As explained in Section II above, though, there is no First Amendment viewpoint discrimination on which the Parents may base their Equal Protection claim for viewpoint discrimination.

mathematical nicety or because in practice it results in some inequality." *Id.* As the district court correctly found, the revised selection guidelines enable the selection of students for the SEA Program who have the attributes likely to make the program successful, and that the purposes of the SEA Program are legitimate pedagogical and state purposes. *See* J.A. 140–41.

The Parents do not directly challenge this determination but rather argue that the SEA Program, not the selection guidelines specifically, are subject to and fail strict scrutiny. *See* Brief at 23–26. The Parents' argument that the SEA Program is subject to strict scrutiny is incorrect, and the Parents' arguments in support of that proposition are attacking a strawman for three reasons.

First, the challenge in this case is to the SEA selection guidelines, not to the SEA Program itself. *See* Brief at 17; J.A. 140. To the extent the Parents now seek to challenge the constitutionality of the SEA Program rather than the selection guidelines, they cannot do so for the first time on appeal. *See Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 87 n.3 (4th Cir. 2013). Second, the Parents' arguments regarding strict scrutiny necessarily assume that the SEA selection guidelines in fact exclude white students from participation in the Program, which is not the case. And third, the Parents misconstrue the district court's holding that SEA Program is intended to "promote a more inclusive education environment by addressing discrimination and the lingering effects of past discrimination." Brief

at 23. The statement quoted by the Parents is part of the district court's conclusion that the SEA selection guidelines were not established with discriminatory intent and the Program was open to all students; the district court did not conclude, as the Parents, suggest, that a program designed to benefit students of color at the expense of white students was not subject to strict scrutiny because of any benevolent purposes behind the program. *See* J.A. 138–39.

As the Parents are unable to demonstrate that strict scrutiny applies to the revised selection guidelines, and because the Parents have not alleged facts to demonstrate that the revised selection guidelines are not rationally related to the purposes of the SEA Program or that the SEA Program is not a legitimate government interest, the district court correctly dismissed the Parents Equal Protection claims based on race (Count I) and viewpoint discrimination (Count III).

## IV. The Parents do not have standing to assert their claims related to the Bias Reporting Form because there is no objectively reasonable chill to their children's speech.

In Counts IV and V, the Parents assert a First Amendment overbreadth claims as to the Bias Reporting Form. The district court dismissed these claims because the Parents failed to allege that the Bias Reporting Form would harm their children in any way. J.A. 144–45.

To demonstrate standing in a First Amendment overbreadth claim, plaintiffs must show that the chilling effect on their expression is objectively reasonable.[12] *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018). As this Court observed, without "a credible threat of enforcement," a plaintiff cannot establish "an objectively good reason for refraining from speaking and 'self-censoring' instead." *Id.* "Subjective or speculative accounts of such a chilling effect" are not sufficient for standing, though. *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011). The chilling effect cannot "arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruit of those activities, the agency might in the future take some *other* and additional action detrimental to that individual." *See Laird v. Tatum*, 408 U.S. 1, 11 (1972).

The Parents argue the Bias Reporting Form chills their children's speech, *see* Brief at 35, but the facts alleged in the Amended Complaint do not demonstrate any "objectively reasonable" chilling effect on the children's speech. Tellingly, the Parents cannot point to any particular basis for their fears from the Bias Reporting Form as implemented by the School Board. There are no factual

---

[12] A plaintiff may also establish standing through demonstrating that they intend to engage in conduct protected by the First Amendment but proscribed by the policy they wish to challenge and that there is a "credible threat" of enforcement against them. The Parents do not rely on this method to establish standing. *See Abbott*, 900 F.3d at 176; Brief at 35.

allegations to support the Parents' assertions in their Brief that the Bias Reporting

Form will be used "to discipline or shame their children for their views," that the

reports will be "reviewed and logged" by the SEAs, or that the School Board is

censoring any speech. *See* Brief at 37. Rather, the Parents allege only that *in other*

*educational settings*, viewpoints other students wish to express have been subject

to bias incident reports. Brief at 36; J.A. 25 (FAC ¶ 64). That some action taken at

different schools, in different states, involving different individuals under different

bias reporting systems would occur in this setting is wholly speculative and cannot

underpin an objectively reasonable chilling effect. *See Laird*, 408 U.S. at 1. They

also claim that they fear the effects of "public disclosure," J.A. 25 (FAC ¶ 65), but

no facts alleged support the conclusion that any public disclosures would be made

on the basis of the Bias Reporting Form. Indeed, the Bias Reporting Form

contains multiple references to the form being used to collect and share

information anonymously. J.A. 125–26.

In addition, as the district court observed, the Parents have not alleged that

there have been any disciplinary incidents, let alone any investigations, that have

taken place as a result of the Bias Incident Reporting form. J.A. 144; *see also*,

*Abbott*, 900 F.3d at 176 ("The most obvious way to demonstrate a credible threat

of enforcement in the future, of course, is an enforcement action in the past.").

Although the Parents argue that they are not required to allege investigations

33

against them or others, *see* Brief at 40, they must still allege facts to show that the alleged chill experienced is objectively reasonable. *Abbott*, 900 F.3d at 176. Indeed, even if they had alleged these facts, this Court has held that a school's prior investigation in which no action was taken and the complaint dismissed does not by itself demonstrate a credible threat of future sanctions. *See id.* at 177. Nor is "a threatened administrative inquiry . . . sufficient to confer standing unless the administrative process itself imposes some significant burden, independent of any ultimate sanction," *id.* at 179, and the Parents have not alleged any facts to demonstrate such a burden exists here.

Lacking factual support for the notion that the Bias Reporting Form objectively chills speech in this case, the Parents instead assert (1) that the existence of the Form itself chills speech, and (2) the young ages of the children involved heightens the Bias Reporting Form's chilling effect. Neither of these arguments succeed in demonstrating that the alleged chilling effect of the Form is objectively reasonable.

In support of their argument that the existence of the Bias Reporting Form itself chills speech, the Parents rely on a series of decisions— none of which are from this Court—holding that certain bias response systems established at several

universities in other circuits unconstitutionally chilled speech.[13]  *See* Brief at 38–39

(citing *Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) and *Speech First,*

*Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019)); Letter of May 3, 2022 (Docket

Entry No. 15) (citing *Speech First, Inc. v. Cartwright*, No. 21-12583, 2022 U.S.

App. LEXIS 10816, at *9 (11th Cir. Apr. 21, 2022)).[14]  But the systems at issue in

those cases differ in material ways from the Bias Reporting Form in this case, and

so these cases cannot provide legal support for the Parents' position.  In particular,

the bias response systems in the *Speech First* cases are designed to provide

information for the response teams to take action on, to conduct some sort of

intervention, and at a minimum, to contact the students accused of being involved

in the bias incidents.  *See Cartwright*, 2022 U.S. App. LEXIS 11864, at *11–*13 &

n.1; *Fenves*, 979 F.3d at 325–26, 338; *Schlissel*, 939 F.3d at 765.  In addition, the

response teams retained authority or discretion to make referrals to other parts of

the university or to law enforcement, even in the absence of the reporting student's

assent.  *Cartwright*, 2022 U.S. App. LEXIS 11864, at *13; *Fenves*, 979 F.3d at

---

[13] The Parents also cite the dissenting opinion in *Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020), which is not even controlling in its own circuit, and likewise provides no aid to the Parents here.

[14] The Eleventh Circuit *sua sponte* vacated the opinion that the Parents cite in their letter of supplemental authority, but the court subsequently reissued the opinion with no consequential revisions.  *See Speech First, Inc. v. Cartwright*, No. 21-12583, 2022 U.S. App. LEXIS 11864 (11th Cir. May 2, 2022).

325–26, 338; *Schlissel*, 939 F.3d at 765.  In contrast, the Bias Reporting Form is plainly intended for informational purposes only and to solicit anonymous anecdotes to inform Share, Speak Up, Speak Out session discussions, not to identify the opportunities for more intrusive intervention seen in the *Speech First* cases.  J.A. 125–26.  Information obtained through the Form is sent to the responding student's own school administrators, not to police or elsewhere, and only if requested by the responding student, who must then give up anonymity.  *Id.* Moreover, the Action Plan makes clear that the Bias Reporting Form does not supersede any existing policies or codes of student conduct.  J.A. 82.  The Bias Reporting Form is different in kind from the bias response systems at issue in the *Speech First* cases, and so the Parents simply cannot point to those systems or any judicial opinions about them to establish standing in this case.

More generally, the Parents argue that the "existence of a check-box for investigation on an official school form further implies a threat to refer for investigation."  *See* Brief at 40.  But this argument falters for at least two reasons.

First, this statement mischaracterizes what the Bias Reporting Form actually reflects.  As the Bias Reporting Form makes clear, "the primary use of this form is for the Office of Equity to capture stories and incidents of bias in an anonymous manner" to be "used in an anonymous manner for the Share, Speak Up, Speak Out sessions of the Student Equity Ambassadors."  J.A. 125–26.  Students have the

option to request the information reported to be investigated "by the administrators at your school," and students are notified that they must provide their name in order for the Office of Equity "to submit your name to your school."  J.A. 126. The Office of Equity conducts no investigation, no anonymous claims are forwarded for investigation, and any investigation is done by school administrators, whose authority to conduct investigations under the existing codes of student conduct the Parents do not challenge.  *See* J.A. 24 (FAC ¶ 56), 82, 127. This in no way resembles the Parents' bugaboo of the SEAs sitting in judgment over their peers, backed by the Office of Equity, with the power to punish the Parents' children for their allegedly unpopular opinions.  *See* Brief at 43.

Second, the cases that the Parents cite to show that the mere option of requesting an investigation threatens one will take place do not support their conclusion.  *See* Brief at 40 (citing *Bauer v. Shepard*, 620 F.3d 704 (7th Cir. 2010) and *ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)).  Each case observes that the existence of a statute implies a threat to prosecute in the unremarkable context of noting that pre-enforcement challenges can be proper under Article III.  See *Bauer*, 620 F.3d at 708; *Alvarez*, 679 F.3d at 591 (quoting *Bauer*).  The challenged provisions in *Bauer* (state's code of judicial conduct) and *Alvarez* (state's eavesdropping statute) are plainly intended to be enforced for their deterrent effect; in contrast, the Bias Reporting Form is plainly intended to collect stories for

discussion topics in a student meeting.  J.A. 125–26.  In addition, the Parents have

not alleged any concrete consequences connected with any "threat to prosecute,"

unlike in *Bauer* (removal from office) and *Alvarez* (criminal prosecution).  Finally,

in *Alvarez*, the court found that a credible threat of prosecution because "[t]he

State's Attorney has recently prosecuted similar violations and intends to continue

doing so."  679 F.3d at 594.  Thus, it was past enforcement and a threat of future

enforcement that led the court to find standing, not the existence of the statute on

its own.  The Parents have not made such allegations about past enforcement or a

threat of future enforcement in this case.

The Parents' additional argument regarding the age of the children

heightening the chilling effect of the Bias Reporting Form is also unpersuasive.

Relying on *Lee v. Weisman*, 505 U.S. 577 (1992), the Parents argue that the

students' youth make them especially susceptible to "indirect coercion" on the part

of the School Board.  Brief at 41–43.  But as this Court explained in *Myers v.

Loudoun County School Board*, it was the "religious nature" of the challenged

activities (i.e., school prayer) that raised the concern in *Lee* that "non-participating

students would be indirectly coerced into accepting a religious message," which

makes *Lee*'s indirect coercion analysis irrelevant when the challenge is to a non-

religious activity.  418 F.3d 395, 408 (4th Cir. 2005).  No activities of a religious

nature are at issue here, and the Parents do not cite any case that distinguishes or

38

overrules *Myers* and applies indirect coercion analysis outside the religion context. Nor does this case provide any reason for the Court to do so here.

The Parents also argue that the Bias Reporting Form creates "official pressure" on the student body to implement a "cancel culture" and peer pressure that chills their children's speech. But there are no facts alleged in the Amended Complaint supporting any connection between the Bias Reporting Form and the creation of the "cancel culture" and peer pressure the Parents assert. Indeed, the opposite is true: the Parents specifically allege that "the views of Plaintiffs and their children on these subjects are often not shared by other residents or young people in Loudoun County" and that "when others have shared views similar to the Plaintiffs and their children . . . , that speech has prompted vitriolic, threatening, and persecutorial responses from others in Loudoun County, including within the [Loudoun County Public Schools] community." J.A. 25 (FAC ¶ 63). The Parents therefore cannot plausibly argue that the Bias Reporting Form is the "proximate cause" of any and all self-censorship on the part of their children. *See* Brief at 43. The district court recognized this when it noted that the Parents' own allegations demonstrated that "fear of an adverse reaction from peers and school administrators . . . would exist separate and apart from the [Bias Reporting Form]." J.A. 145. The Parents' assertion that the district court impermissibly speculated as to the cause of self-censorship is therefore unfounded. *See* Brief at 42.

The Parents have not alleged any facts to demonstrate that the chill allegedly experienced by their children from the Bias Reporting Form is objectively reasonable, such that the Parents have standing to pursue those claims.[15] *Abbott*, 900 F.3d at 176. Accordingly, Counts IV and V of their Amended Complaint, regarding the Bias Response Form, were properly dismissed.

## CONCLUSION

For the reasons explained herein, the district court properly dismissed each of the Parents' claims, and so the School Board requests that the district court's decision be affirmed.

Respectfully submitted,

*/s/ Andrew P. Selman*
Stacy L. Haney
Andrew P. Selman
HANEY PHINYOWATTANACHIP PLLC
11 South 12th Street, Suite 100 B
Richmond, Virginia 23219
Tel: (804) 500-0310
Fax: (804) 500-0309
shaney@haneyphinyo.com
aselman@haneyphinyo.com

*Attorneys for Appellee Loudoun County School Board*

---

[15] The Parents' closing invocation of the Supreme Court's opinion in *Mahonoy Area School District v. B.L.* is unhelpful because that case concerns off-campus speech and so is not applicable here. 141 S. Ct. 2038, 2043 (2021).

**REQUEST FOR ORAL ARGUMENT**

The School Board requests oral argument in this case. The Court's decisional processes would be aided by oral argument given the number and complexity of the legal issues involved in this appeal. In addition, oral argument will significantly aid the Court's decisional process in light of the significant disputes between the parties regarding the appropriate characterization of the facts alleged and the implications of certain facts not alleged in the First Amended Complaint.

## RULE 32 CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 9,674 words, excluding the items listed in

Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements to Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally-spaced typeface using Microsoft Word

in Times New Roman font, size 14.

Dated:  May 12, 2022

*/s/ Andrew P. Selman*_____